## LEWIS vs. COOK & MITCHELL.

1. Where a trustee cannot do an act in respect to the trust estate, without violating the directions of the instrument creating the trust, and subjecting himself to liability, a court of equity will not interfere, at the instance of one of the *cestuis que trust*, the others being minors, and order the act to be done in opposition to the trustee's wishes.

2. Where a trustee, to whom a sum of money is bequeathed in trust, to be put at interest for the benefit of the *cestuis que trust*, lends it, at the legal rate of interest, in the State in which the testator resided at the time of his death, and where the funds then were, he will not be removed from the trust, because he refuses to put it at interest in another State, where the legal rate of interest is higher.

3. Whether, if a trustee lends the trust funds upon personal security alone, and a loss ensues, he will not be liable—QUERE?

ERROR to the Chancery Court of Russell. Tried before the Hon. W. W. Mason.

JAMES C. COOK, the father of the complainant, amongst other things, bequeathed to the complainant and her children five thousand dollars, to be put at interest for their benefit by the trustees, appointed by his will, who are the defendants in error. The bill alleges that the trustees have received this sum and loaned it at interest in the State of Georgia, so that it has yielded but seven per cent., when it could be placed in safe hands in this State, at an interest of eight per cent. It is also alleged that the complainant and her children have a separate estate in a valuable tract of land in Russell county; that her husband has also valuable lands adjoining her's, and that the slaves she owns are not capable of cultivating it as profitably as it might be done; that the non-improvement of the lands is a waste of capital and diminishes the value of her separate estate; and that if this legacy of five thousand dollars was vested in slaves, to be employed on her lands, the profits arising from their labor would yield near twenty per cent. per annum. It is further shown by the bill that James C. Cook, one of the trustees, resides in Georgia, and that Mitchell, the other, cannot attend to the management of the trust fund, owing to the variety of his engagements. The bill prays that the trustees may be removed and others appointed with directions to invest the mo-

ney in slaves for the sole and separate use of the complainant and her children, and for general relief. The answer of the defendants admit the receipt of the money, as trustees under the will, and alleges that they as well as the testator at the time of his death resided in the State of Georgia, and that they have loaned said sum of money at seven per cent., the legal rate of interest in that State; that they have been put to no expense in collecting it; and that the investment, though in private hands, is nevertheless secure. They further insist, that the intention of the testator would be defeated by converting the funds into slaves; that it was his intention to provide a permanent fund in the hands of the trustees, from the proceeds of which, under all the circumstances, the complainant and her children would receive a support and maintenance. They admit that the complainant and her children own valuable lands in Russell county, and that more slaves could be profitably employed on it than she owns, but deny that the labor of slaves upon it would yield twenty per cent.; they deny that they have mismanaged the trust fund, admit that Mitchell now resides in the State of Alabama, and insist that the funds should remain in their hands at interest. They, however, submit to be removed, if a proper trustee can be appointed, giving security for the performance of the trust according to the will of the testator. Some evidence was taken, but it being in reference to the land, and the profits that could be relized from the labor of slaves upon it, it is not necessary to notice it. The chancellor dismissed the bill at the final hearing, and the complainant has prosecuted a writ of error to this court.

RICE, for the plaintiff in error:

1. There is in the bill a prayer for general relief, and if a court of equity can upon its allegations grant any relief whatever, the bill was improperly dismissed for want of equity.

2. A bill contains equity which shows that the trust fund is not yielding as much as in good faith it ought to yield—not more than 7 per cent.—when it could be managed in this State so as to yield at least 8 per cent.; the non-residence of one trustee and the inability of the other, arising from various matters of his own business; the failure of the trustees to invest the fund in any real securities, or government stock, &c. It is not good

faith in trustees, to let the trust fund on mere personal security, and in such manner as not to make it yield more than 7 per cent., when it can yield more.

3. If nothing more is done, the court ought to decree that the trustees (especially the non-resident) pay the trust fund into the Chancery Court, so that it may be put out by that court at 8 per cent. interest. But other relief ought to be granted. The relief specifically prayed for is allowable under the facts stated in the bill.

BELSER & HARRIS, for the defendants:

1. The diligence required of a trustee, who controls a trust estate, is ordinary prudence in its management.—Jones' Appeal, 8 Watts & Ser. 143; Lowell v. Minott, 20 Pick. 116.

2. It is not every mistake or neglect of duty, or inaccuracy of conduct of trustees, which will induce courts of equity to remove them, but these acts and omissions must be such as to show bad faith.—2 Story Eq. Juris. 723, sec. 1289; Attorney Gen'l v. Cooper, 19 Vesey, 192; Dean & Wife v. Rathbone's Adm'r, 15 Ala. 334.

3. A loan of money in the hands of a trustee, at 7 per cent., is no evidence within itself of mismanagement and bad faith.—Gordon v. West, 8 N. Hamp. 455; Cham v. Bass, 1 B. Mon. 217; Whiting v. Walker, 2 ib. 261; Gooch v. Frelick, 8 Watts, 19.

4. The trustees under the will had no right to change the character of the fund sought to be vested in slaves, and the court properly decreed against it.—2 Story Eq. Juris. 708, sec. 1276; 2 Whar. Dig. 618, sec. 82; Petition of Polk, 1 Ashmead, 340; Bar v. McKenzie, 6 Mumf. 446; McCulloch v. Sommerville, 8 Leigh, 416.

DARGAN, C. J.—The object of this bill is to remove the trustees, appointed by the executor to manage the trust fund, and to convert it into slaves. Were we to do this, we should violate the plain intention of the testator. The clause of the will, by which the fund is bequeathed, is in the following language: "I also give unto her (Caroline Lewis) and her children five thousand dollars in cash, as soon as it can be collected, to be put at interest for the benefit of Caroline Lewis and her

children, by the trustees; this I wish to be a separate estate."
Here the testator gives plain and specific directions how the
trust funds shall be employed, and we know of no principle that
that will justify a conversion of the funds into other personal
property, at the request of one of the *cestuis que trust*, the others
being infants, when there is no necessity for it, but upon a
speculating idea, that the money could be more profitably em-
ployed by the conversion than by pursuing the directions of the
testator. The general rule, regulating the conduct of trustees
in reference to the management of the trust estate, is this, that
where special instructions are given in the instrument creating
the trust, the trustee should strictly pursue them, (2 Story Eq.,
§ 1276,) and if he depart from the directions, he is liable for
any loss, however honest and fair his intentions may have been.
Pride v. Fooks, 2 Beav. 430. As the trustees themselves
cannot violate the instructions of him, who creates the trust,
without subjecting themselves to responsibility, surely the court
will not interfere and order it to be done against their wishes, at
the request of one of the *cestuis que trust*, the others being minors.

The trustees so far have pursued the directions of the testa-
tor; they have employed the trust funds as directed, and it yields
the lawful interest in the State of Georgia, where the testator
resided at the time of his death, and where the funds were.
They cannot be removed because they do not loan out the
money in another State, where the legal rate of interest is higher.
In reference to the kind of security, however, they take for the
re-payment of the money, it may be well to observe, if it be
personal security only, and the money should be ultimately lost,
it would be difficult for them to acquit themselves of liability;
but as they show by their answer that they consider the fund
entirely secure, we will not undertake to decide this question,
which in all probability will never arise.

Let the decree of the chancellor, dismissing the bill, be af-
firmed.